IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Lamont Cutner, | ) |
| Plaintiff, | ) Civil Action No. 6:23-5282-RMG-KFM |
| | ) |
| vs. | ) **REPORT OF MAGISTRATE JUDGE** |
| | ) |
| Sgt. Myers, | ) |
| Defendant. | ) |

This matter is before the court on the motion for summary judgment of the defendant Sgt. Myers (doc. 103) and the plaintiff's letters to the court regarding his mail and access to legal supplies filed on December 2, 2024, and March 27, 2025, which have been construed as motions for injunctive relief (docs. 92, 136). The plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983. Under the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Section 1983 and submit findings and recommendations to the district court.

## I. BACKGROUND

On October 23, 2023, the plaintiff's complaint was entered on the docket (doc. 1). Upon initial review of the plaintiff's second amended complaint, the undersigned issued an order authorizing service of process of the plaintiff's excessive force claim against Mr. Williams[1] and Sgt. Myers and a report and recommendation recommending that the plaintiff's remaining claims and defendants be dismissed (docs. 36, 37). The Honorable Richard M. Gergel, United States District Judge, adopted the report and recommendation

---

[1] The plaintiff originally identified this defendant as Cpl. Williams; however, for purposes of this report and recommendation, he will be identified as Mr. Williams based on the updated information provided by the plaintiff regarding his name.

on March 18, 2024, leaving only the plaintiff's excessive force claims against Mr. Williams and Sgt. Myers pending in this action (doc. 42).

After the plaintiff failed to provide sufficient information for the United States Marshals Service to serve Mr. Williams, the undersigned issued a report and recommendation recommending that Mr. Williams be dismissed as a defendant (doc. 68). On August 29, 2024, the Honorable Richard M. Gergel adopted this recommendation (doc. 75). As such, the operative complaint in this action is the plaintiff's second amended complaint with a claim of excessive force alleged solely against Sgt. Myers (doc. 35).

The plaintiff is currently serving a life sentence at McCormick Correctional Institution in the South Carolina Department of Corrections ("SCDC") (Incarcerated Inmate Search, https://public.doc.state.sc.us/scdc-public/ (enter Lamont Cutner) (last visited June 10, 2025)). At the time of the incident on May 20, 2021, giving rise to this lawsuit, the plaintiff was incarcerated in the SCDC's Kirkland Correctional Institution's restricted housing unit ("RHU") (doc. 35 at 6–9). The plaintiff claims that on that date while Sgt. Myers was serving lunch, Sgt. Myers entered the plaintiff's cell and punched the plaintiff in the face and head because Sgt. Myers claimed the plaintiff threw something at him (*id.* at 8). The plaintiff alleges that Sgt. Myers called Mr. Williams into the cell to hold the plaintiff down on the ground so that Sgt. Myers could further attack the plaintiff (*id.* at 8–9). The plaintiff claims that his head, face, right shoulder, and knee were injured in this incident (*id.* at 13).

After requesting and receiving two extensions of time (docs. 71, 81, 72, 82), Sgt. Myers timely filed a motion for summary judgment on December 16, 2024 (doc. 103). That same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately to the motion (doc. 104). On January 6, 2025, the plaintiff filed a motion for extension of time to file a response (doc. 118), and the next day, this court granted this motion and extended the plaintiff's response deadline to January 30, 2025 (doc. 119). On January 17, 2025, the plaintiff timely filed his response in

2

opposition to the motion (doc. 125), and Sgt. Myers filed a reply on January 24, 2025 (doc. 127).

On February 4, 2025, the plaintiff, without court permission, filed a second response in opposition to the motion for summary judgment (doc. 132). Again, without permission, the plaintiff filed a sur-reply to Sgt. Myers' reply (doc. 133). Sgt. Myers filed a reply to the plaintiff's second response on February 11, 2025 (doc. 134). On March 20, 2025, the plaintiff filed a letter with additional medical records attached (doc. 135). He has continued to file letters with additional medical records (docs. 143, 144). The plaintiff also filed other letters related to this motion for summary judgment (docs. 87, 88, 100, 105, 130, 140), all of which the undersigned has reviewed and considered. Accordingly, this motion for summary judgment is ripe for review.

## II. FACTS PRESENTED

As noted above, only the plaintiff's excessive force claim against Sgt. Myers remains for consideration (*see* docs. 42, 75). The parties agree that there was an incident on May 20, 2021, when the plaintiff threw a substance[2] at Sgt. Myers while he was serving lunch at KCI in the RHU (*see* docs. 103-4 at 2, 126-1 at 4). According to Sgt. Myers' statement during the investigation of the incident by the SCDC's Office of Investigations and Intelligence, the plaintiff struck Sgt. Myers with this substance again when Sgt. Myers tried to close the plaintiff's food flap (doc. 103-4 at 2). The plaintiff told Sgt. Myers that he had more of this substance and would throw it at anyone who came to his door (*id.*). Sgt. Myers ordered the plaintiff to step away from the door and called another officer to help him close the plaintiff's food flap and restrain the plaintiff (*id.*). The plaintiff threw more of the substance when they tried to close the food flap (*id.*). It took the officers several attempts to restrain the plaintiff (*id.*).

---

[2] While the parties disagree on whether the substance was feces (doc. 103-4 at 2) or spoiled milk and egg (doc. 126-1 at 4), this is ultimately irrelevant to the disposition of this case.

3

The plaintiff testified in his affidavit that after he threw the substance on Sgt. Myers, Sgt. Myers yelled for Mr. Williams to assist him, and then Sgt. Myers went inside the plaintiff's cell (doc. 126-1 at 4-5). The plaintiff claims that Sgt. Myers punched the plaintiff's head and face and also kicked the plaintiff from behind (*id.*). The plaintiff testified that Mr. Williams caused his right shoulder injury by falling on him (*id.*).

The SCDC medical staff evaluated the plaintiff in his cell after the incident and did not see any bleeding or bruising on his skin (*see* doc. 103-5 at 3), and there were no injuries noted in his medical records (*see id.*). The plaintiff claims the nurse did not get close enough to see his swollen face or cut lip because the officers told the nurse that the plaintiff had threatened to throw feces on anyone who came to his cell (doc. 126-1 at 6–7). The day following the incident, May 21, 2021, the plaintiff saw his SCDC mental health counselor who noted as follows: "The Worker also requested information relating to the Inmate dashing feces on an Officer {on 5.20.21}. He stated, 'I threw shit on him because I wanted to come back to BMU'" (doc. 103-6 at 3). It was noted that the plaintiff's appearance and physical characteristics were all "within normal limits," no physical injuries were noted, and the plaintiff did not complain of any physical injury (*id.* at 2–3). The plaintiff produced medical records from nearly four years after the incident in which the SCDC nurse noted that she "[a]ttempted to discuss why [the plaintiff] has not complained of the pain in the right shoulder sooner or discussed in a prior sick call visit, but [the plaintiff] became more agitated" (doc. 135-1 at 4). The plaintiff also produced a copy of an x-ray taken shortly after that visit, which showed degenerative disease in his right acromioclavicular ("AC") joint (*id.* at 1).

With his motion, Sgt. Myers submitted an affidavit from Felecia McKie, the Agency Inmate Grievance Coordinator/Branch Chief of the Inmate Grievance Branch of the General Counsel for the SCDC (doc. 103-9 at 2, McKie aff. ¶ 2). She explained that each inmate is instructed about the grievance process at the time of entry into any SCDC facility and a copy of the Inmate Grievance System policy is available in the library for the inmates

4

to review (*id.* at 3, ¶ 5). She described the Inmate Grievance System as a "three-step process" (*id.* at 2, ¶ 1).

> Inmates first must make an effort to resolve grievances informally by writing their complaint on SCDC Form 19-11, Request To Staff Member (RTSM) to a staff member related and responsible for the area of their concern within eight (8) working days of the incident. . . . Method of submitting requests is based on inmate housing assignments.

> In cases where Informal Resolution is not required, inmates are required to complete a SCDC Form 10-5, Inmate Grievance Form, Step 1. The Step 1 Grievance Form must be dropped in the Grievance Box at the correctional institution within five (5} working days of the alleged incident, the timeframe set forth in the Grievance Policy GA-01.12. Once filed by the Inmate, the grievance will be enrolled to the electronic tracking system and processed by the appropriate Inmate Grievance Coordinator. The Grievance Forms are readily available in the Common's areas of the Correctional Institutions.

> ***

> Except in emergency situations, the inmate must complete and submit the SCDC Form 10-5, Step 1 Grievance Forms to begin the formal grievance process. If the Step 1 Grievance is denied, and he wishes to file an appeal, the inmate must file a Step 2 grievance using SCDC Form 10-5A. If the Step 2 grievance is denied, and if the inmate wishes to file an appeal, the inmate must appeal to the South Carolina Administrative Law Court using the Administrative Law Court Notice of Appeal form that is provided to the inmate when he/she is served with the answer to his/her Step 2 grievance. All Informal Resolution, Step 1 and Step 2 are considered internal means by which an inmate can fully avail himself/herself of remedies associated with the SCDC Inmate Grievance System. Should an inmate fail to follow all the above steps, SCDC Inmate Grievance System has not been afforded an opportunity to resolve the inmate's concerns. Furthermore, if an inmate fails to file an appeal with the South Carolina Administrative Law Court, the inmate has failed to avail himself/herself of all remedies associated with the South Carolina Administrative Law Court.

> All SCDC personnel responsible for responding to an inmate grievance will afford each successful grievant a meaningful remedy to the extent that their respective positions, authority, and resources allow. . . . However, employee disciplinary action which may or may not occur will not be disclosed through the grievance process.

> Upon receipt of a grievance, the IGC [Institutional Grievance Coordinator] will conduct an investigation (i.e., talking with the appropriate staff and/or inmate(s), reviewing all documents and/or reports, etc.) into the situation and will make

5

recommendations to the Warden concerning the disposition of the matter.

***

The Warden will respond to the grievant in writing indicating the rationale for the decision rendered and any recommended remedies. The grievant will also be informed of his/her rights to appeal to the next level. The response will be served by the IGC to the grievant, within ten (10) calendar days, and the grievant will sign and date the response acknowledging receipt. If the Inmate/grievant is not satisfied with the decision of the Warden, the grievant may next appeal through the Step 2 process to the Deputy Director of Operations for final Departmental resolution of the grievance.

Any grievance which alleges criminal activity will be referred immediately to the Agency Inmate Grievance Coordinator/Branch Chief /designee, Inmate Grievance Branch. Criminal activity is defined under the policy to include any illegal activity to include . . . staff assaults . . . The Chief/Designee, Inmate Grievance Branch, will consult with the Office of Inspector General to determine if a criminal investigation would be appropriate. If deemed appropriate, the grievance will be forwarded to the Office of Inspector General, to be handled in accordance with applicable SCDC policies/procedures. The grievance will be held in abeyance until the Office of Inspector General completes their review/investigation. If dissatisfied with the findings of the Office of Inspector General, the Inmate/Grievant has the opportunity to appeal to the next level and must do so to exhaust his administrative remedies.

(*Id.* at 3–7, ¶¶ 6–7, 9–12, 14).

In addition to McKie's affidavit testimony, the undersigned takes judicial notice of SCDC Policy/Procedure, Inmate Grievance System, GA–01.12, (May 12, 2014) (doc. 103-9 at 10–20),[3] which outlines the grievance process and is consistent with McKie's above summary. *See Malik v. Ward*, 8:08-cv-1886-RBH, 2010 WL 936777, at *2 n.4 (D.S.C. Mar. 16, 2010) ("The Court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA–01.12"). Relevant here, SCDC Policy GA-01.12 at Section 13.7 provides the following guidance about filing a step two grievance: "The grievant may appeal by completing the SCDC Form 10-5a, Step 2 to the IGC within five (5) calendar days

---

[3] This was the policy in effect at the time the plaintiff filed his grievance.

of the receipt of the response by the grievant, by placing the Step 2 form in the designated institutional grievance box" (doc. 103-9 at 16).

McKie stated that she reviewed the plaintiff's records and found that he filed a step one grievance (doc. 103-9 at 8, McKie aff. ¶¶ 16–17; doc. 103-9 at 21). Because the plaintiff alleged an assault in his grievance, the matter was referred to the Office of Investigations and Intelligence (or Police Services), and following an investigation that included victim, witness, and suspect interviews, the Warden denied the plaintiff's grievance on August 22, 2022 (doc. 103-9 at 22; doc. 132-1 at 2).[4] On August 26, 2022, the plaintiff indicated on the step one grievance form that he did not accept the Warden's decision, but the SCDC did not receive a step two grievance form from the plaintiff (doc. 103-9 at 22; doc. 132-1 at 2; doc. 103-9 at 8, McKie aff. ¶ 17). In his undated declaration, the plaintiff alleges that he "filled the step 2 [grievance] out" and "turn[ed] it in to the same Sgt. who assaulted me," but he claims that Sgt. Myers "threw it away" (doc. 126 at 3). In his January 6, 2025 affidavit, the plaintiff testified that "I was thinking [Sgt. Myers] filed [my step 2 grievance] but I guess he threw it away" (doc. 126-1 at 2). Elsewhere, in another document filed in this case, the plaintiff claimed that he did file his step two grievance, but due to his transfers between prisons, he filed it late, and the grievance was returned to him unprocessed (doc. 87 at 1–2).

In his motion for summary judgment, Sgt. Myers argues that the plaintiff's excessive force claim should be dismissed because the plaintiff failed to exhaust his administrative remedies and he has failed to demonstrate an injury sufficient to satisfy the objective component of an Eighth Amendment constitutional violation (doc. 103-1). In his responses to the motion for summary judgment,[5] the plaintiff contends that he exhausted

---

[4] The Office of Investigations and Intelligence determined that probable cause existed to pursue charges against the plaintiff, but because of the length of his sentence, it was determined to be "not judicially prudent to pursue criminal charges" (doc. 103-3 at 2).

[5] The plaintiff filed multiple responses and letters that mostly repeat the same arguments, and the undersigned reviewed and considered all of them.

7

his administrative remedies by handing a copy of his step two grievance to Sgt. Myers because inmates in the RHU do not have access to the grievance mailbox (docs. 125 at 16–17, 133 at 1). He also claims that the medical records do not mention an injury because the medical staff did not properly evaluate him on the day of the incident because they were afraid of getting too close to his cell (doc. 125 at 6). He further claims that Sgt. Myers violated "Use of Force Policy 22.01"[6] Section 12.7 because the shift supervisor did not consult with the plaintiff's mental health counselor before using force (docs. 125 at 9, 132 at 2) and this policy requires video evidence be submitted to the Warden (125 at 14–15).[7] In his replies, Sgt. Myers contends that the plaintiff fails to provide an excusable reason for failing to exhaust his administrative remedies because all inmates have direct access to the grievance box (docs. 127 at 1, 134 at 1).

### III. APPLICABLE LAW AND ANALYSIS

**A.     Defendant's Summary Judgment Motion**

**1.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a

---

[6] Neither party filed a copy of this alleged policy, and the undersigned could not find a copy uploaded to the SCDC policy listings (https://www.doc.sc.gov/policy/policy-listing). Nonetheless, it is well-settled that violations of SCDC policy, standing alone, do not amount to constitutional violations. *See Joyner v. Patterson*, No. 0:13-cv-2675-DCN-PJG, 2014 WL 897121, at *4 (D.S.C. Mar. 6, 2014) ("Section 1983 provides relief from a violation of federal constitutional rights, not from a violation of prison-created policies or procedures."), *R&R adopted by* 2014 WL 3909531 (D.S.C. Aug. 11, 2014), *aff'd by* 597 F. App'x 748 (4th Cir. 2015).

[7] However, later, he admits that there were no cameras in the RHU and claims that the officers "took advantage of this no camera footage" to assault him (doc. 132 at 4).

reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### 2.    Exhaustion of Administrative Remedies

Sgt. Myers first argues that he is entitled to summary judgment because the plaintiff failed to exhaust his administrative remedies (doc. 103-1 at 4–5). The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions under Section 1983 or any other federal law. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular

9

episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93–94 (2006). As the Supreme Court has noted, "Aggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89–90. This is especially true in a prison context. *Id*. at 90 n.1. Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91.

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Thus, an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones v. Bock*, 549 U.S. 199, 211–12 (2007); *Anderson v. XYZ Corr. Health Servs., Inc*., 407 F.3d 674, 681 (4th Cir. 2005). However, "[t]o survive a motion for summary judgment asserting he failed to exhaust [his administrative remedies], an inmate is required to produce competent evidence to refute the contention that he failed to exhaust." *Noe v. S.C. Dep't of Corr.*, No. 8:18-cv-00256-DCC-JDA, 2019 WL 2090564, at *3 (D.S.C. Mar. 6, 2019) (citing *Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010)), *R&R adopted by* 2019 WL 2089275 (D.S.C. May 13, 2019).

Having reviewed the evidence submitted by the plaintiff and Sgt. Myers, the undersigned finds that the plaintiff did not exhaust his administrative remedies and

10

therefore recommends that the district court grant Sgt. Myers' motion for summary judgment. As discussed above, Sgt. Myers provided an affidavit from McKie, which sets forth the SCDC inmate grievance procedure (doc. 103-9). Sgt. Myers alleges that the plaintiff only submitted a step one grievance relating to claimed excessive force and did not submit a step two grievance. McKie stated that after the Warden denied the plaintiff's step one grievance, the plaintiff had the opportunity to file a step two grievance, but he failed to do so (*id.* at 8, McKie aff. ¶ 17).

In response, the plaintiff testified that he submitted his step two grievance to Sgt. Myers (doc. 126-1 at 2). The plaintiff argues in his unsworn sur-reply that because he was in RHU he did not have direct access to the mailbox himself and "had to rely on officers to turn [his step two grievance] in" (doc. 133 at 1). However, the plaintiff did not testify in any of his affidavits or declarations that the SCDC prevented his access to the grievance mailbox (*see* docs. 132 at 13–15, 126, 126-1 at 1–3). McKie testified that "the grievance system is available to all SCDC inmates regardless of custody level, classification, disciplinary status, disabilities, or other administrative matters" (doc. 103-9 at 3, McKie aff. ¶ 4). Further, SCDC Policy GA-01.12 required the plaintiff to put his step two grievance form in the designated institutional grievance box (doc. 103-9 at 16, § 13.7). Accepting as true the plaintiff's testimony that he gave his step two grievance form to Sgt. Myers, the plaintiff did not follow the SCDC grievance procedures, and, accordingly, he failed to exhaust his administrative remedies.[8]

While the plaintiff argues that the grievance policy was unavailable to him, he has failed to produce any evidence to support this contention. *See, e.g.*, *Adams v. Sw. Va. Reg'l Jail*, No. 7:12-cv-00462, 2014 WL 3828392, at *1-3 (W.D. Va. Aug. 4, 2014) (finding

---

[8] As noted, the plaintiff claimed in another unsworn document that he filed a step two grievance regarding the incident at issue here, but due to his transfers between prisons, he filed it late, and the grievance was returned to him unprocessed (doc. 87 at 1–2). Even if the plaintiff had provided sworn testimony to this effect, "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir.1984) (citation omitted).

that a plaintiff failed to show that the administrative process was unavailable to him even when he had a traumatic brain injury, experienced confusion and short-term and long-term memory loss, and alleged that jail staff never took the time to explain the computer kiosk or grievance process "as they should" because there was no evidence that "any jail employee did anything to frustrate or prevent him from using the grievance procedure"), *aff'd sub nom. Adams v. Ofought*, 592 F. App'x 225 (4th Cir. 2015).

   For the foregoing reasons, the undersigned finds that the plaintiff has failed to exhaust his administrative remedies or show that he was prevented, through no fault of his own, from availing himself of the grievance process. Thus, the undersigned recommends that the plaintiff's excessive force claim against Sgt. Myers be dismissed for failure to exhaust.

## B. Plaintiff's Motions for Injunctive Relief

   The plaintiff also filed two documents that the court construes as motions for injunctive relief to prevent unidentified individuals from interfering with his mail service and his access to mail supplies (docs. 92, 136). The plaintiff's motions assert new claims unrelated to the allegations in this case or the defendant named in this case and seek affirmative relief prior to any adjudication on the merits of the original claim. The plaintiff asserts that individuals (who are not named in this action or in his motions) violated his rights by failing to deliver his mail timely and failing to provide a sufficient amount of supplies.

   A preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Centro Tepeyac v. Montgomery Cnty*., 722 F.3d 184, 188 (4th Cir. 2013) (internal quotation marks omitted). Because granting a motion for preliminary injunctive relief "requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way[,] [t]he danger of a mistake in this setting is substantial." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp*., 17 F.3d 691, 693 (4th Cir. 1994) (internal quotation marks omitted). Accordingly, the decision whether to grant a preliminary

injunction is committed to the equitable discretion of the district court. *See Salazar v. Buono*, 559 U.S. 700, 714 (2010).

The plaintiff has failed to show that Sgt. Myers played any role in this alleged mail problem. *See Causey v. Williams*, No. 4:22-cv-1475-JD-TER, 2023 WL 4851196, at *9 (D.S.C. July 28, 2023) (denying the inmate's motion "to order 'Defendants,' who were not involved in withholding his mail, to produce the mail to him"). Because the defendant in this case does not "appear to have any role in creating or enforcing the [mail] supply limitations at issue," the plaintiff has not shown he is entitled to a preliminary injunction in this matter. *Goss v. Morley*, No. 2:19-cv-2469-BHH-MGB, 2020 WL 519892, at *2 (D.S.C. Jan. 3, 2020), *R&R adopted by* 2020 WL 509137 (D.S.C. Jan. 31, 2020) (denying inmate's motion for injunction against the defendants because they had no role in the limiting of his writing and mailing supplies). "[T]o the extent [the plaintiff] seeks to enjoin persons who are not parties to this lawsuit, [the] motion is improper." *Abdullah-Malik v. Bryant*, C.A. No. 1:14-cv-109-RBH, 2015 WL 225740, at *3 (D.S.C. Jan. 16, 2015). *See also Wilson v. Givens*, C.A. No. 9:21-cv-00523-RMG, 2021 WL 2935241, at *2 (D.S.C. July 13, 2021) ("Plaintiff impermissibly seeks relief against individuals who are not parties to this action."). Therefore, the undersigned recommends that the plaintiff's motions be denied.

## IV. CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the undersigned recommends that the district court grant Sgt. Myers' motion for summary judgment (doc. 103) and deny the plaintiff's motions for injunctive relief (docs. 92, 136).

IT IS SO RECOMMENDED.

June 10, 2025                                         s/Kevin F. McDonald
Greenville, South Carolina                     United States Magistrate Judge

***The attention of the parties is directed to the important notice on the following page.***

13

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).